The opinion of the court was delivered by
Monroe, J.
Plaintiff, claiming to be the owner of property abutting on Lake Stréet, in the city of Shreveport, alleges that the defendant has-wantonly and maliciously obstructed said street, whereby he has been injured, and he prays for judgment ordering the removal of the obstruction and condemning the defendant in damages, actual and punitory. The answer is a general denial, with an averment that the defendant has fene"ed in its right of way but has invaded no public or private-property. The main question presented is, whether a certain strip of land belongs to defendant’s right of way, or is the extension of Lake street, on the west side of Common street.
There was a-verdict and judgment in the District Court in favor of the defendant, and. the plaintiff has appealed.
For the purposes of this opinion,'it will be assumed that Common', street runs due North and South, and that Lake street crosses it at right angles, and hence, runs East and West.
The evidence shows that Lake-street, on the East side of Common,, was opened prior to 1849 and was, and is, 66 feet wide, and that the city on that side of Common street is divided into blocks, whilst on the West side, what is called the “ten acre lot” subdivision still obtains. Opposite the point, on the East side of Common street, where Lake-street comes in, is the centre, or dividing line between the upper, or- *2037 Northern, and the lower, or Southern, halves of “Ten Acre Lot No. 6”, said line being a few feet to the South of the centre line iof Lake street, extended, and the two halves of said Ten Acre Lot 6, extending along Common street, to the North and south of said line, respectively.
Prior to June, 1849, so far as appears from the record, Lake street had not been opened West of Common street, and Ten Acre Lot 6, or that portion lying opposite the opening of said street into the East side of” Common street, was owned by Elisha LI. Jordan, who, upon June 4, 1849, by notarial act, sold to R. D. Sale, a parcel of ground described as follows, to-wit: ■ “A certain lot of ground in Ten Acre Lot, in Shreve- ■“ port, parish and state aforesaid, No. 6, fronting oh Common street, 60 “ feet, and running back 150 feet, on the lower corner of the upper half “ of said Ten Acre Lot, known as the property of the said Jordan, after “ allowing the width, to-wit, twenty-one feet threé inches, necessary for '“ Lake street to be continued through said Teh Acre Lot, being, and ly“ing, 011 said Common, as though said Lake street was continued as “ aforesaid.”
Upon March 30th, 1858, Sale conveyed this lot, by the same description, to Won. E. Murray, from whom it was acquired, in 1876, by ILovan and Looney, the latter being the present owner.
A few days after the sale thus made, to Murray, to-wit, April 3rd, 1858, R. D. Sale executed an act of conveyance, to the Vicksburg, Shreveport & Texas R. R. Co., of which the defendant is the successor, of a strip of land, measuring 65 feet on the North side of the line of the centre of its track, and 40 feet on the South side of said line, which, it seems to be conceded, was intended to refer to land owned by him in Ten Acre Lot 6, though, "'from the act offered in evidence, it is impossible to say where it is situated. It is shown, however, that the Railroad Company had, either at that time, laid its track, or that- it laid it shortly afterwards, across Ten Acre Lot 6, its direction (assuming Common street to run due North and South) being from South West, to North East, and that it reached Common street about opposite the point at which Lake street enters it, on its East side. As far as we can judge, from the information with which we have been furnished, this track lies mainly to the South of the centre line of Ten Acre Lot 6, though it may, and probably does, impinge upon said line at the intersection of Common street, but it nowhere appears to get entirely on the North side of that line.
*2038 This being the case, and it not being pretended that Sale ever owned any part of lot 6, South of the centre line, it follows that, in so far as his deed to the company purported to convey a strip 40 feet wide on the South side of its track, the company took nothing.
And, inasmuch as he had, four days before the execution of the conveyance to the company, sold to Murray all thát he had ever acquired on the North side of the centre line of lot 6, it equally follows that, in so far as his deed to the company purported to convéy a strip 65 feet wide on the North side of its track, the company took nothing.
It further appears that, until within the past year or two, the extension of Lake street, West of Common, as dedicated to public use by Jordan, in 1849, has been practically and universally recognized as embracing the strip of land adjacent to, and to the North of, the centre line of Ten Acre Lot 6, save perhaps where that line is impinged on by the defendant’s track. A somewhat greater width has, however been accorded to said strip ijhan.that spoken of in the dedication, by reason of the fact that there appears to be some twenty feet or more of frontage on Common street, between the point in question and the next street to-the North (Tally street), than is called for by the titles of the front proprietors.
The strip dedicated by Jordan, it will be observed, extended back 150-feet from Common street, that being the depth of the lot sold by him to Sale; and the owners of adjacent property have, presumably, regulated their conduct and dealings with reference to that fact. The plaintiff, who is an emancipated minor, owns two'lots, originally acquired by his mother in 1869 and 1871, respectively,.which are situated at the Western end of said dedicated strip, which has always afforded the owners of said lots ingress and egress to the same, and to the residence and place of business thereon situated.
It further appears that the defendant, at one time,- started to lay another track, parallel with, and just upon the North side of, its present track, in the disputed territory, but discontinued the work, and demolished what had been done, in consequence of notice to that effect from the city authorities. During the summer of 1899, however, it obstructed the entrance to Lake street, West, by leaving a car upon the track, and, thereafter, early in October, it caused a fence to be built, running North and South, at a point about 150 feet West from Common street, entirely across the strip, 21 feet, three inches wide, lying adjacent to the centre line of Ten Acre Lot 6, and a few feet into the *2039 territory beyond, to the North. This fence is within seventeen inches of the line of plaintiffs property, and completely cuts off access thereto from Lake street, if Lake street is properly located next to the centre line of Ten Acre Lot 6. The theory upon which this is done appears to be that the strip dedicated by Jordan, as the extension of Lake street, does not lie adjacent to the centre line of Ten Acre Lot 6, but lies North of that line, and, by reason of the language used in the act of dedication,, is to be found by extending Westward the Northern line of Lake street, as it already existed on the Eastern side of Common. If this theory were adopted, there is, still, as far as we can discover, no excuse for the defendant’s fence, as it stands, since it projects considerably within the limit of 21 feet, 3 inches from the northern line of Lake street, as thus extended. But the theory is without support. As. we have seen, the defendant’s author Sale, acquired absolutely no land whatever to the North side of the centre line of Ten Acre Lot 6, for the reason that he had previously sold to Murray all the property in said lot that he owned North of that line, by the identical description by which he acquired it, and if there is a surplus in the frontage between said line and Tally street, to the North, Sale’s first vendee, to whom he conveyed all of his rights, would be the beheficiary, rather than the defendant, who became his vendee when he had nothing to sell.
Aside from this, the language of the original dedication is plain enough, and the testimony of the estimable gentlemen, civil engineers and surveyors, summoned as witnesses by the one side or other, giving their views as to its proper interpretation, has not served to make it any less so.
Jordan, it* is fair to presume, knew that Lake street, East of Common, was 66 feet wide, and he was at liberty to have extended it through his property, on the West side of Common street, ' to that width, and to have made the lines prolongations of the lines already established on the East side of Common street, or he could have dedicated a strip less than 66 feet wide for the extension, and have had one of the lines of Lake street, East, or neither of them, to so correspond, as he thought proper. He seems, naturally enough, to have made the dedication with reference to the measurements, the lines of division, and the convenient disposition, of his own property; and he sold a lot “fronting on Common street, 60 “ feet, and running back ISO feet, on the lower corner of the upper "“half of said ten acre lot after allowing the width, to-wit: twenty- *2040 “one feet, three inches, necessary for Lake street to be continued “ through said Ten Acre Lot, being and lying' on Common street, as though said Lake street was continued as aforesaid.”
The last few words, beginning with “being and lying”, seem to be unnecessary and they cannot, by any possibility, be held to alter the meaning of the preceding language, which specifically fixes the location of the strip dedicated. And that they were not so intended seems evident from the word “aforesaid”, which refers the clause, of which it forms a part, back to the disposition already made — which disposition ’provides for the continuation of Lake street, by means of the dedication ■of a strip of land allowed, or taken, from "the lower corner of the upper dmlf, ' of ten acre lot 6, after allowing the width bo-wit, twenty-one feet three inches, necessary for Lahe street to he continued through said, Ten Acre Lot.”
It has been suggested, in this court, by defendant’s counsel, that the case should be remanded in order that the City of Shreveport and some adjacent proprietors should be made parties, and, as the matter then presented itself to thel.court, the suggestion seemed a good one. Further consideration has, however, led to the conclusion that its adoption would operate an injustice. The plaintiff brought a suit for damages, alleging that the defendant had fenced, and thereby obstructed, a public thoroughfare, to his detriment and damage. The defendant answered •by claiming that the property fenced belonged to if, as its right of way, and, inferentially, that it had been fenced by the authority of the City of Shreveport. -But, no attempt was made, by the defendant, through tire court, to bring the City of Shreveport, or any one else, into the case, and no suggestion appears to have been made that the plaintiff ought to make other parties. The case was, therefore^ tried between the plaintiff and defendant, and upon the issues, as made by their pleadings. For ■.this court, now, to hold that .the plaintiff must go back and make the City of Shreveport and otirer persons parties to the suit, would be to hold that he has no right'to'an action in damages until, and unless, . be obtains a judgment, contradictorily ¡with such persons, in an action of • boundary, and this, notwithstanding the absence of any plea, exception, or defence, other than the issue of fact presented by the answer. And we are not prepared to adopt that view. 'As has already been stated, the property in question was dedicated to public use in terms which could leave no reasonable doubt as to its identity. In -addition to that, we understand from the evidence, taken in connection with the fact that *2041 there is no dispute upon the point, that the property so dedicated was used as a public thoroughfare for nearly fifty years, and until the defendant undertook recently to assert its present .claims. Under these circumstances, we can discover no better reason for requiring the plaintiff to resort to an action of boundary as a preliminary to the present suit, than if the defendant had injured him by obstructing any other street in Shreveport. The course pursued by the defendant was imprudent in the extreme. The courts were open to it for the assertion of its rights, and, before taking possession of property which had been dedicated to the public, and which, with its acquiescence during forty years, had been used as, and held to be, public property, it should have resorted to the courts. It must now accept the consequences of its failure to do so.
The plaintiff claims damages for loss of profits in the business conducted on his property, but the evidence shows that the business is not his. He makes a claim for loss resulting from depreciation in the rental valhe of the property, but the property was not rented, and it ■does not appear that the plaintiff had any intention of offering it for rent. It was, and is, occupied by his father, who keeps a saloon and boarding house, and who has given some testimony as to the loss sustained by him in that business. He further testifies, however, that his son, the plaintiff, lives with him, and that prior to the shutting in of the premises, by the defendant, he had been in the habit of furnishing his son with four of five dollars a- week, besides supplying his wants in other ways, 'and that, since then, he has not been able to furnish so much.
The testimony as to the specific loss by the plaintiff, is, therefore rather vague. It is shown conclusively, however, that the obstruction •of the street by the car, and by the fence erected by the defendant, has been generally prejudical to the property, and is an invasion of plaintiff’s rights. And it is1 also-shown that the defendant acted without reasonable ground for believing that it was entitled to pursue the summary course adopted by it, without the pressure of necessity of .any kind, and, so far as appears from the record, without legal advice.
Under these circumstances, we are of opinion that damages, both actual and exemplary, should be awarded, and we fix the amount at $150.- Nichol vs. Railroad Company, 44 Ann. 816.
It is therefore ordered, adjudged, and decreed, that the verdict and .judgment appealed from be annulled, avoided and reversed, and that *2042 there now he judgment in favor of the plaintiff, Arthur B. Walker, and against the defendant, the Vicksurg, Shreveport & Pacific Railroad Company, in the sum of $150.
It is further ordered, adjudged, and decreed, that said defendant be condemned to remove the fence erected by it on the North side of the centre line dividing’ the North, from the South, half of Ten Acre Lot 6, and within 150 feet West of Common street, in the City of Shreveport, which land, to a width of, at least, twenty-one feet three inches, North of said line and running 150 feet West from Common street, and parallel fo Lake street, East of said Common street, is recognized and held to be a public thoroughfare, the continuation of said Lake street, in said City of Shreveport. It is further ordered that the defendant pay all costs.
Blanchard, J., taxes no part in this decision.